IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KTM AG,<br><br>                Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>                Defendants. | Case No. 20-cv-6677<br><br>Hon. Judge Martha M. Pacold |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS NICE2BOY AND NICECNC'S MOTION TO DISMISS**

**INTRODUCTION**

1. Defendants nice2boy and NiceCNC respectfully submit a combined this memorandum of law in support of its motion to dismiss Plaintiff KTM AG's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). First, Defendants use of the letters "KTM" is a descriptive fair use. Therefore, Plaintiff's Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). Next, Plaintiff has the burden of showing a right to the relief, and has no ground to seek emergency injunctive relief against Defendants pursuant to Fed. R. Civ. P. 65(b)(4). Therefore, Plaintiff's Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and Plaintiff's TRO and asset freeze should be dissolved pursuant to Fed. R. Civ. P. 65(b)(4).

## PROCEDURAL HISTORY AND BACKGROUND FACTS

2. Plaintiff KTM AG ("Plaintiff") sued 244 defendants, all of which are sellers on Amazon.com, Ebay.com, or other similar E-Commerce platforms, for trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), and trademark violation under Illinois State law (815 ILCS § 510/1, et seq.).

3. Defendants nice2boy and NiceCNC received notification from their respective selling platforms, Ebay.com and Amazon.com, that listings for many of many products would be deactivated because of this Court's Temporary Restraining Order. Amazon.com and Ebay.com also indicated that Defendants' entire seller's accounts were then frozen under aforementioned TRO. These platforms provided no recourse, encouraging contact directly with Plaintiff's counsel.

4. Defendants do not use any marks which are protected by the Plaintiff or any third-parties in a manner that would confuse the public. Any use of protected marks are used to simply identify compatibility for their aftermarket offerings (Exhibit A, affected nice2boy eBay store listings targeted by the Plaintiff; Exhibit B, affected NiceCNC Amazon store listings targeted by the Plaintiff).

5. Plaintiff provides a single nice2boy Ebay.com listing, and many NiceCNC Amazon.com listings, that all adhere to the same standard, describing the parts as "replacement for," "fit to," or other language that clearly delineated the products as non-original, aftermarket, third-party solutions.

6. Defendants do not use marks protected by the Plaintiff or third parties, and no sponsorship is suggested. Defendants listing provide for multiple compatible brands

and the product is described as "replacement for" or "fit to," no reasonable party could plausibly allege that a consumer would be confused about the source of the listed Defendant products as coming from any different company, much less from Plaintiff KTM.

7. Defendants are not registered to do business in Illinois. Defendants have no regular and established place of business in Illinois. Defendants do not maintain any offices, employees, or telephone listings in Illinois. Defendants have no manufacturing facility or distribution facility in Illinois. Defendants do not pay taxes or maintain any bank accounts in Illinois. Defendants do not participate in any business meetings, seminars, trade shows, or other marketing related activities in Illinois. Defendants do not have any employees who visit Illinois for business purposes, and Defendants do not send agents in Illinois to solicit business. Defendants do not own any real or personal property in Illinois.

8. The cited listings are for products that were developed by Defendants and their business partners in China. The products were not developed or manufactured in Illinois. All marketing and sales decisions related to the products were made at Defendants' offices in China.

9. Plaintiff's Complaint states that the Defendants "go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Internet Stores," and "use a variety of other common tactics to evade enforcement efforts." However, the Complaint does not detail any facts specifically applicable to any certain defendant, and ultimate, provides no concrete grounds that plausibly allege trademark infringement.

10. Specific to Defendants nice2boy or NiceCNC, the Complaint provides no specific details that would provide adequate grounds for the alleged trademark infringement. This includes meeting the standards to prove grounds related to Count I, allegation trademark infringement and counterfeiting under 15 U.S.C. § 1114, Count II, allegations of false designation of origin under 15 U.S.C. § 1125(a), or Count III, allegations of violation of Illinois prohibitions against deceptive trade practices.

## ARGUMENT

### Dismissal under Fed. R. Civ. P. 12(b)(6)

11. A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a complaint. *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). A complaint must contain enough information, in the form of "a short and plain statement of the claim," to give the defendant "fair notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

12. To prevail on either a trademark claim or unfair competition claim, Plaintiff must demonstrate that Defendants' use of a protectable mark "is likely to cause confusion among consumers." *Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016). Plaintiff must plead allegations that make it plausible that such likelihood of confusion exists. *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014) ("Allegations of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible."); *Top Tobacco v. Fantasia Distribution Inc.*, 101 F. Supp. 3d 783, 790 (N.D. Ill. 2015).

13. In the instant case, Plaintiff failed to allege it has similar distinct product offerings as the Defendants. Defendants are using their own brands in the sale of the complained products. Plaintiff obviously failed to sufficiently demonstrate that Defendants' use of the word "KTM" is likely to cause confusion among consumers.

14. Even assuming the allegation of likelihood of confusion in the Complaint were sufficient, it is not here, Plaintiff's claims against Defendants should still be dismissed because of the fair use defense.

15. Under 15 U.S.C. § 1115(b)(4), a defendant in a trademark infringement action may invoke the fair use defense by demonstrating that the alleged infringement "is a use, otherwise than as a mark ... which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." This defense "is based on the principle that no one should be able to appropriate descriptive language through trademark registration." 15 U.S.C. § 1115(b)(4); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 951 (7th Cir. 1992); *M.B.H. Enter., Inc. v. WOKY, Inc.*, 633 F.2d 50, 52 (7th Cir. 1980).

16. To prevail on a fair use defense, a defendant must show that: (1) it did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001).

### A) Non-Trademark Use

17. A word or phrase functions as a trademark when it is used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products. *Sands, Taylor & Wood Co.* at 953.

18. Here, by analyzing the following factors the courts have usually used to determine whether it is a non-trademark use or not, the Court should make a conclusion that Defendants used the word "KTM" in its complained product listing titles in a non-trademark use.

19. First, the courts have found to support a non-trademark use if the defendant is using other trademarks as source indicators. *Packman*, 267 F.3d at 639-40. Here, Defendants are not using the word "KTM" to identify themselves as the source of the complained products. Rather, Defendants use their own distinctive brands to identify the source of the complained products. Defendants expressly identify their brands in their Amazon and eBay storefront seller profiles. The Defendants brands signifies that the complained products come from them, not the Plaintiff. The use of word "KTM" in the product title does not identify the source of any of the Defendants products, and thus, Defendants use was "otherwise than as a trademark."

20. In addition, a similar use by others in the relevant industry will make the court to support a non-trademark use. *SportsFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 599 (7th Cir. 2019). Sellers of motorcycle or bike parts products regularly invoke the "replacement for ..." or "fit to ..." to describe the products they sell. There are numerous examples of this widespread practice in the industry. We have included and point to the following examples (*see* **Exhibit A**):

    - "Battery For iPhone SE 2016 Brand New Replacement Internal (1624mAH) FREE Tools" (eBay)
    - "Universal Replacement Vintage Motorcycle Helmet Top Pad Padding fits Buco Bell" (eBay)

- "NOS National Cycle #N2210 Replacement Motorcycle Windshield For Harley Davidson" (eBay)
- "PAC HDK001X Radio Replacement Interface for 1998-2013 Harley-Davidson Motorcycles,black" (Amazon)
- "HFP-382-D Fuel Pump with Strainer Replacement for Ducati Motorcycle" (Amazon)

These examples were found with the most cursory of searches on Amazon and eBay, and it is clearly regular practice to use the name of the branded product to identify the compatibility of the aftermarket product. This widespread industry use is a factor that the Court shall consider to support a non-trademark use in this case.

21. Further, Amazon has specifically tailored its seller tools to aid customers in finding these aftermarket parts for brand-name products. As can be seen in the final example, "HFP-382-D Fuel Pump with Strainer Replacement for Ducati Motorcycle," Amazon has implemented a specific, customer facing tool to aid in making sure customers are getting the correct aftermarket part (see below). This tool pops up automatically, and is clearly trying to help businesses sell, and customers find, the right replacement aftermarket replacement products for branded goods. In this case, the fuel pump part is a "replacement for" popular brand "Ducati" motorcycle.



22. Finally, the lack of any assertion of exclusive rights in the designation by Defendants is another factor that the Court will consider to support a non-trademark use. *SportsFuel*, 932 F.3d at 598 (finding that defendant's disclaimer of the challenged designation in its application supports a descriptive use finding).

### B) Descriptive Use

23. Descriptive terms "impart information directly." *M.B.H. Enter.*, 633 F.2d at 54. A descriptive term ordinarily names a characteristic of a product or service. *H-D Mich., Inc. v. Top Quality Serv.*, Inc., 496 F.3d 755, 759 (7th Cir. 2007). Defendants are using their own brands "nice2boy," "NiceCNC," and others on their product pages while selling the complained products online. The use of "replacement for ..." or "fit to ..." describe a characteristic of Defendants' products, which means that Defendants' products could be used in KTM motorcycles or bikes.

24. Accordingly, the record supports only one conclusion, that Defendants' use of the word "KTM" in its product title is merely a descriptive use which Defendants, or any other person or entity, may rightfully use, and Defendants' such use is in a descriptive sense in its application supports a descriptive use finding).

### C) Fair and Good Faith Use

25. A party raising a fair use defense "must show that it used the plaintiff's mark fairly and in good faith." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 725 (7th Cir. 2015). The Defendants' "mere knowledge" of the plaintiff's mark, without other evidence of subjective bad faith, is insufficient. *Id*; *see also SportsFuel*, 932 F.3d at 600; *Packman*, 267 F.3d at 642.

26. When assessing fairness and good faith, courts may consider the dissimilarity of packaging and labeling, which may be evidence of good faith. *SportsFuel*, 932 F.3d at 598; *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 796 (5th Cir. 1983). While determining the fairness and good faith element, the courts may also consider the degree of likelihood of confusion, as the greater the likelihood of confusion, the less likely the use is fair. *Marketquest Group, Inc. v. BIC Corp.*, 862 F.3d 927, 938 (9th Cir. 2017) (in the fair use analysis, the degree of customer confusion is a factor to consider).

27. In this case, Defendants used the word "KTM" in the complained product title fairly and in good faith. As an initial matter, Plaintiff failed to allege in the Complaint that Defendants used the Plaintiff's mark in bad faith. Plaintiff also failed to plead that Plaintiff has the similar product as the dirt bike hand bar grip product sold by Defendants. Nowhere in the Complaint plead that there is any similarity of packaging and labeling between Plaintiff's products and Defendants' products.

Defendants used their own packaging and labeling to sell their products. Defendants used their own brand in selling the complained products on Amazon.com and Ebay.com. Defendants' brands identify the source of the complained product. Defendants expressly identify their brands in their Amazon and eBay storefront seller profiles on Amazon.com and Ebay.com. As such, no reasonable person would believe that the complained products originate from Plaintiff, and Defendants' use of the word "KTM" in its product titles and descriptions would not cause any likelihood of confusion to the general public. Therefore, it is fair to say that Defendants descriptively used the word "KTM" in its product title fairly and in good faith.

28. For the foregoing, the Court should find that Defendants' use of the language "replacement for …," "fit to …," or similar were a non-trademark use, in good faith, to describe a characteristic of its product. (Exhibit A and B).

### D) Nominative Use

29. Further, the Seventh Circuit has firmly held, in particular factual settings, that nominative type uses are not actionable under the Lanham Act. *E.g., Ill. High Sch. Ass'n v. GTE Vantage Inc.*, 99 F.3d 244, 246 (7th Cir. 1996) (Posner, J.) (citing *New Kids* and noting that the plaintiff could not have sued the defendant for use of its trademark "in advertising if the term were used merely for identification"); *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616 (7th Cir. 1995) (Easterbrook, J.) (endorsing defendant's right to engage in comparative advertising); *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503-04 (8th Cir. 1987) ("[A]n imitator is entitled to truthfully inform the public that it believes ... it has produced a

product equivalent to the original and that the public may benefit through lower prices by buying the imitation.").

30. The Defendants are offering aftermarket solutions that use "KTM" in product titles and descriptions solely as language to "truthfully inform the public that it believes ... it has produced a product equivalent to the original."

31. Defendants' use of the word "KTM" in their product titles and descriptions are a normative use and are "merely for identification."

32. Thus, it is fair to say that Defendants use fall with the designation of "nominative type uses" and are "not actionable under the Lanham Act" as held by the Seventh Circuit in similar factual cases.

## Dissolution of TRO and Asset Freeze

33. The Court should dissolve the preliminary injunction and asset freeze as to Defendants.

34. Under Federal Rule of Civil Procedure 65(b)(4), the party against whom a temporary restraining order has issued may move to dissolve or modify the order. FED. R. CIV. P. 65(b)(4). In seeking continued injunctive relief, the plaintiff must show a right to relief. *EPRO Servs., Inc. v. Regenesis Bioremediation Prods.*, No. 19-1220-EFM, 2019 U.S. Dist. LEXIS 146053, at *5 (D. Kans. Aug. 28, 2019). The motion to dissolve may be granted when the injunctive order was improperly issued. *Rabbi Jacob Joseph School v. Province of Mendoza*, 342 F. Supp. 2d 124, 127 (E.D.N.Y. 2004).

35. Here, the Plaintiff cannot show a likelihood of success, the sine qua non of injunctive relief. To reiterate, Defendants have done nothing confusing as a matter of

law concerning the Plaintiff's trademarks. Defendants sell aftermarket products that are compatible with or interoperate with the Plaintiff's products. As detailed above, communicating this fact in a product listing is perfectly acceptable. And Defendants have done so without using stylized logos or eye-catching designs that might imply any sponsorship.

36. Plaintiff has not met the legal standard required to invoke preliminary injunction and asset freeze as to Defendants. Therefore, the TRO and asset freeze were wrongful and should be dissolved as to Defendants.

**Release of Bond**

37. Finally, the Court should authorize release of the bond for the lost sales by Defendants under the improvidently-sought injunction. This case was a misfire as to Defendants and the Plaintiff should not have sought a preliminary injunction against it. The law on this point is clear. There is a rebuttable presumption that a wrongfully enjoined party should have the bond executed and recover provable damages up to the amount of the bond. *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994). This rebuttable presumption discourages parties from requesting injunctions based on tenuous legal grounds. *Id*. It further ensures that the party enjoined will recover damages, thereby compensating a wrongfully enjoined party for its injuries. *Id*. The bond at bar should therefore be released.

**CONCLUSION**

For the foregoing reasons, nice2boy and NiceCNC ("Defendants") respectfully request that the Court dissolve in part the Temporary Restraining Order, unfreeze Defendants' assets, dismiss this case in its entirety, or alternatively under Fed. R. Civ. P.

12(b)(6) as to Defendants, and release the bond to compensate Defendants for an improvidently-sought injunction.

DATED January 19, 2021          Respectfully submitted,

<div style="margin-left: 3em;">

/s/ Ge (Linda) Lei
Ge (Linda) Lei
Getech Law LLC
203 N LaSalle St
Suite 2100
Chicago, IL 60601
Tel.: 312-888-6633
Attorney No. 6313341
linda.lei@getechlaw.com

*ATTORNEY FOR DEFENDANTS*
*nice2boy and NiceCNC*

</div>