IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KTM AG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 1:20-cv-06677 |
| | ) | |
| The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified On Schedule A Hereto, et al., | ) ) ) ) | Hon. Martha M. Pacold |
| | ) | |
| Defendants. | ) | |

## DEFENDANT MOTOKU'S MOTION TO DISMISS

COMES NOW Defendant MOTOKU, by and through counsel, and files this Motion to Dismiss pursuant to Federal Rule of Procedure 12(b)(6), showing the Court as follows:

I.   INTRODUCTION

MOTOKU is an Amazon storefront operated by Colorado eCommerce Plus, Inc. a Colorado corporation. MOTOKU'S manufacturing and offices are located in China, but they maintain a corporate office and have a registered agent in the State of Colorado. Plaintiff is suing MOTOKU for trademark infringement under the Lanham Act for selling competing after market motorcycle parts on Amazon, the listings for which include descriptive fair use of the word "KTM." MOTOKU's listing for the item in question in this matter says that the part is compatible with KTM, among other manufacturers.

MOTOKU did not have any sales of the items at issue in this matter in the State of Illinois. MOTOKU was never served in Colorado. Plaintiff's claims against MOTOKU should be

dismissed because the Court lacks jurisdiction over MOTOKU, and also because its listing for the product complained about by Plaintiff in this matter constitutes descriptive fair use.

II. **ARGUMENT**

    A. **The Court Lacks Personal Jurisdiction Over MOTOKU.**

        1. **The Court Lacks Personal Jurisdiction Because MOTOKU Was Never Properly Served, Did Not Sell Any Of The Products At Issue In Illinois, and Does Not Maintain Sufficient Contacts With The State Of Illinois To Create Personal Jurisdiction.**

The Lanham Act does not authorize nationwide, much less worldwide service of process. *Am. Bridal & Prom Indus. Ass'n, Inc. v. The Partnerships & Unincorporated Associations Identified on Schedule A*, 192 F. Supp. 3d 924, 931 (N.D. Ill. 2016). "The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). Only proper service vests a district court with personal jurisdiction over a defendant. *Luxottica Group S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816, 821 (7th. Cir. 2019).

        2. **The Court Lacks General Personal Jurisdiction Over MOTOKU.**

MOTOKU is the Amazon storefront operated by a Colorado corporation named Colorado eCommerce Plus, Inc. MOTOKU is the name of the storefront and the trademark for the brand, but the corporation is not named MOTOKU, and Plaintiff did not name Colorado eCommerce Plus, Inc. in this matter, despite having ready access to the name of the corporation on MOTOKU'S Amazon Seller Profile, a copy of which is attached as Exhibit.

MOTOKU is not "at home" in the State of Illinois for the purpose of general jurisdiction. It does not have offices in Illinois, nor does it have any employees in Illinois. It has never sent agents to Illinois to conduct business, nor has it ever advertised or solicited business in Illinois. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014).

MOTOKU is not registered to conduct business in Illinois; has no regular and established place of business in Illinois; does not maintain any offices, employees, or telephone listings in Illinois; has no manufacturing facility or distribution facility in Illinois; does not pay taxes in Illinois; does not participate in meetings, trade shows, seminars, or other marketing-related activities in Illinois; and does not own or rent any real or personal property in Illinois. (See Ex A, Declaration of ZhiYe Zhang, the owner of Colorado eCommerce Plus, Inc.)

Plaintiff appears to be attempting to create jurisdiction by accessing MOTOKU's Amazon storefront posing as a buyer, and using that contact to create jurisdiction against MOTOKU's will. This the law does not allow.

### 3. The Court Lacks Specific Personal Jurisdiction Over MOTOKU.

Specific jurisdiction is appropriate only where the defendant "purposefully has directed [its] activities at the forum state or purposely availed [itself] of the privilege of conducting business in the state, and …the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King*, 471 U.S. at 472). The "purposeful-availment requirement ensures that a defendant's amenability to jurisdiction is not based on 'random, fortuitous, or attenuated contacts,' but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue." *N. Grain Mktg., LLC v. Greving*, 743 F.3d

482, 492–93 (7th Cir. 2014) (quoting *Burger King*, 471 U.S. at 479). "The inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" *Brook*, 873 F.3d at 552; *Int'l Precision Components Corp. v. Greenpath Recovery W., Inc.*, 17 C 9179, 2018 WL 1920118, at *4 (N.D. Ill. Apr. 24, 2018). The exercise of specific jurisdiction must also comport with traditional notions of fair play and substantial justice. *Tamburo*, 601 F.3d at 702 (citing *Int'l Shoe*, 326 U.S. at 316).

Further, unlike some other circuits, which focus on the "interactivity" of a website, the Seventh Circuit does not have an "Internet-specific test for specific jurisdiction." *Dobrowolski v. Intelius, Inc.*, 17 CV 1406, 2017 WL 3720170, at *3 (N.D. Ill. Aug. 29, 2017) (citing *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (outlining cases)). Instead, in the Seventh Circuit, Internet-specific cases (like non-Internet cases) center on whether the defendant has sufficient minimum contacts with Illinois such that exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Advanced Tactical*, 751 F.3d at 800–01 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Finally, and perhaps most pertinently, the mere operation of an e-commerce store that can be accessed by consumers in Illinois does not constitute minimum contacts "aimed" at Illinois for the purposes of personal jurisdiction. *See Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir.2014). Indeed, **"offering [products] for sale on the internet, without more, [does not] demonstrate[] that defendant purposefully directed its activities . . . toward customers in Illinois."** *Richter v. INSTAR Enterprises Int'l, Inc.*, 594 F. Supp. 2d 1000, 1013 (N.D. Ill. 2009) (emphasis added). Without an actual sale of an allegedly infringing product to consumers in Illinois, or at least sales

negotiations with an actual Illinois consumer, a defendant's maintenance of an e-commerce store that simply has the potential of shipping products to Illinois consumers only establishes "potential contacts." *Id*. **"[C]ourts [with** the Seventh Circuit] have similarly held that 'the mere existence of a website that makes an infringing product available for purchase is not enough to establish personal jurisdiction.'" *Id*. at 1014 (emphasis added). This is significant. Plaintiff seems to be portraying Amazon storefronts as being "sent" to or "directed at" Illinois. Websites are not sent anywhere. A website or e-commerce site exists and consumers may proactively seek to visit it. The "broadcast" analogy is fallacious and designed to shore up Plaintiff's extremely weak personal jurisdiction theory.

Even in cases where a defendant does make *actual sales* of an allegedly infringing product, such sales are not necessarily sufficient to establish "minimum contacts." *See Matlin v. Spin Master Corp*., No. 17 C 07706, 2018 WL 3496088, at *4 (N.D. Ill. July 20, 2018), *aff'd*, 921 F.3d 701, 2019 WL 1760387 (7th Cir. 2019) ("[T]he common thread between all courts addressing whether defendants are subject to personal jurisdiction in Illinois for having a website that Illinois residents can access to purchase products is that the mere internet sale from a website is insufficient to hale a defendant into the forum's jurisdiction without something more."); *see also Original Creations Inc. v. Ready American Inc*., 836 F.Supp.2d 711, 716 (N.D. Ill. 2011) (finding that "the lone documented sale to an Illinois resident and the fact that [Defendant] fulfilled that order, intentionally sending the allegedly infringing product into the state, may be been 'purposeful' ... [but] that sale alone is an insufficient basis upon which to find personal jurisdiction"); *Gro Master, Inc. v. Farmweld, Inc*., 920 F. Supp. 2d 974, 982 (N.D. Iowa 2013) (holding that a single sale to Illinois of an allegedly infringing product, along with

a national advertisement thereof, was insufficient to establish defendant purposefully directed its activities at residents of the forum state).

Case law within the Seventh Circuit has been fairly consistent on these points. *Compare Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (finding no specific personal jurisdiction over the defendant where the defendant fulfilled several orders of the allegedly infringing projectiles for purchasers in Indiana, knew plaintiff was an Indiana company and could foresee that the misleading emails and sales would harm plaintiff in Indiana, sent at least two misleading email blasts to a list that included Indiana residents, had an interactive website available to residents of Indiana, and put customers on its email list when they made a purchase because the plaintiff has no evidence of any actual sales by defendant in Indiana and regardless *de minimis* sales would not support personal jurisdiction); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (finding no specific personal jurisdiction even though defendants' website offered free dating profiles to consumers in all 50 states and *twenty Illinois* residents created free profiles on the website); *Guinness World Records Ltd. v. Doe*, 664 F. Supp. 2d 927, 929 (N.D. Ill. 2009) (finding no specific personal jurisdiction in a trademark case where defendant operated a website and executed a general email marketing campaign that reached Illinois consumers and generated three sales of its products to two Illinois residents, involving total gross sales of only $1,153 because such conducts were "de minimis contacts") *with Illinois v. Hemi Group, LLC*, 622 F.3d 754 (7th Cir. 2010) (finding specific personal jurisdiction where the foreign- state defendant's online sale of three hundred packs of cigarettes to Illinois residents "triggered Illinois' claims against it" by violating an Illinois law requiring that such sales are properly reported); *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 904 (N.D. Ill. 2015) (finding specific personal

jurisdiction where defendant operated an interactive e-commerce website, three consumers with Illinois shipping addresses attempted to purchase the allegedly counterfeit products from defendant, and defendant engaged in email communications with those consumers wherein defendant provided the Illinois consumers defendant's PayPal account information); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 836 (N.D. Ill. 2000) (finding personal jurisdiction over defendant where it (i) registered a domain name and designed a website using an Illinois company's mark, (ii) "pursued and established vendors and suppliers in Illinois," and (iii) "attended trade shows in Illinois designed to promote its business in Illinois").

In this case, MOTOKU sold no at-issue products to consumers in Illinois, none specifically targeted any advertising of the at-issue products to Illinois, and did not negotiate any sales with any consumers in Illinois. The mere fact that these Defendants operated an Amazon storefront from which an Illinois resident *could potentially* purchase items only establishes the *potential* for personal jurisdiction, not actual jurisdiction, and fails to establish the kind of "contacts" that "demonstrate a real relationship with the state with respect to the transaction at issue." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 482, 492–93 (7th Cir. 2014) (quoting *Burger King*, 471 U.S. at 479). Simply put, The 68 Stores did not engage in Illinois-specific activity to establish minimum contacts with Illinois. *Tile Unlimited, Inc. v. Blanke Corp.*, 47 F. Supp. 3d 750, 757 (N.D. Ill. 2014); *see also Russell v. SNFA*, 2013 IL 113909, ¶¶ 78, 91.

The Plaintiff cannot manufacture personal jurisdiction by doing an internet search, posing as a consumer to an online storefront, not negotiating a purchase with that storefront, not completing a purchase from that storefront, and then claiming that the Defendant sought

the Plaintiff out to sell it something. The Supreme Court has made clear that for the purposes of personal jurisdiction, **the "[p]laintiff [or its agents] cannot be the only link between the defendant and the forum."** *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis added). Therefore, the actions of Plaintiff's agents, who created the screenshots Plaintiff will use to bolster its claims of personal jurisdiction, are not relevant to or admissible evidence of personal jurisdiction. Put another way, "[j]urisdiction may not be manufactured by the conduct of others." *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1127 (4th Cir. 1986); *Haggerty Enterprises, Inc. v. Lipan Indus. Co.*, No. 00 C 766, 2001 WL 968592, at *4 (N.D. Ill. Aug. 23, 2001). To hold otherwise would create a sweeping "forum shopping" rule and would directly violate the Supreme Court's prohibition against allowing the "[p]laintiff" to be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Simply put, the screenshots created by Plaintiff's agents do not establish the kind of "contacts" that "demonstrate a real relationship with the state with respect to the transaction at issue," *N. Grain Mktg., LLC v. Greving*, 743 F.3d 482, 492–93 (7th Cir. 2014) (quoting *Burger King*, 471 U.S. at 479), and do not comport with traditional notions of fair play and substantial justice. *Tamburo,* 601 F.3d at 702 (citing *Int'l Shoe,* 326 U.S. at 316).

The Court lacks both general and specific personal jurisdiction over MOTOKU. MOTOKU's Motion to Dismiss should be granted.

> B. **Plaintiff's Complaint Against MOTOKU Should Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6) Because MOTOKU's Use Of The Term KTM In Its Online Listings Constitutes Fair Use.**

MOTOKU's "use" of the term "KTM" is fair, and thus Plaintiff has failed to state a claim under the Lanham Act or Illinois law. Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate.

1. **Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of a complaint. Bonnstetter v. City of Chicago, 811 F.3d 969, 973 (7th Cir. 2016). A complaint must contain enough information via "a short and plain statement of the claim" to give the defendant fair notice of the claim and its basis. Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To prevail on either a trademark claim or unfair competition claim, a plaintiff must demonstrate that the defendants' use of a protectable mark is likely to cause confusion among consumers. Phoenix Entm't Partners v. Rumsey, 829 F.3d 817, 822 (7th Cir. 2016). A plaintiff must thus plead allegations that make it plausible that such likelihood of confusion exists. See, Fortres Grand Corp. v. Warner Bros. Entm't Inc., 763 F.3d 696, 700 (7th Cir. 2014) ("Allegations of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible).

Instead, Plaintiff pleads facts which demonstrate the implausibility of a likelihood of confusion, namely, Defendant's fair use of Plaintiff's mark. 15 U.S.C. § 1115(b)(4); See Packman v. Chi Tribune Co., 267 F.3d 628, 639 (7th Cir. 2001) (observing that when no likelihood of consumer confusion exists, the defendants use is often found to be fair use). Statutory fair use will serve as a complete defense to a claim for trademark infringement if the Defendant can show: (i) it did not use the mark as a trademark; (ii) the use is descriptive of its goods; and (iii) it used the mark fairly and in good faith. Packman, 267 F.3d at 639. While fair use is an affirmative defense, the Court may consider an affirmative defense in analyzing a 12(b)(6) motion if the facts necessary to make the determination are evident on the face of the complaint. Hoopla Sports & Entm't, Inc. v. Nike, Inc., 947 F. Supp. 347, 356 (N.D. Ill. 1996), *quoting*, Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067,

1069 (11th Cir. 1984); Tamayo v. Blagojevich, 526 F.3d 1074, 1086 (7th Cir. 2008) ("If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief."). Documents not attached to the complaint may be considered if they are referred to in the complaint, are concededly authentic, and are central to the plaintiff's claim. Hecker v. Deere & Co., 496 F. Supp. 2d 967, 972 (W.D. Wis. 2007), *aff'd*, 556 F.3d 575 (7th Cir. 2009), *citing*, Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002).

   2.   **MOTOKU Did Not Use "KTM" As A Source Identifier.**

MOTOKU's product listing on Amazon clearly indicates that it is a product manufactured and sold by MOTOKU, and not from KTM. (Ex. A) When a defendant uses other trademarks as source indicators, the action is likely a non-trademark use and is therefore fair use. Packman, 267 F.3d at 639-40. MOTOKU clearly identifies itself as the source of the product in the listing text and in the title. MOTOKU is not using KTM's mark.

   3.   **MOTOKU's Use Of The Term "KTM" Was Descriptive.**

A descriptive term "is one that merely describes the ingredients, qualities, or characteristics of an article of trade or service. Timelines, Inc. v. Facebook, Inc., 938 F. Supp. 2d 781, 793 (N.D. Ill. 2013), *quoting*, Mil-Mar Shoe Co., Inc. v. Shonac Corp., 75 F.3d 1153, 1157 (7th Cir. 1996). MOTOKU's listing says its part is "compatible with KTM". By indicating that its product is compatible with KTM, MOTOKU is clearly indicating that the product is not the KTM product, but rather a MOTOKU product that is compatible with the KTM product. MOTOKU clearly displays that its own brand is the origin of the goods being sold. Use of the phrase "compatible with" KTM and other brands including Kawasaki, Yamaha, and Honda describes a characteristic of the MOTOKU product: namely, that it is compatible with KTM

products and not, for example, compatible with other products like Ducati. This is plainly a descriptive use of Plaintiff's trademark.

4. **MOTOKU's "Use" Of The Term KTM, Was In Good Faith.**

A party asserting the fair use defense to trademark infringement "must show that it used the plaintiff's mark fairly and in good faith." Sorensen v. WD-40 Co., 792 F.3d 712, 725 (7th Cir. 2015). Courts may consider the dissimilarity in packaging, labeling, and display of the competing products when assessing good faith by the defendant. SportFuel, Inc. v. PepsiCo, Inc., 932 F.3d 589, 600 (7th Cir. 2019). "Mere knowledge" of the plaintiff's mark is insufficient to demonstrate bad faith. Id.

It is clear from reviewing Plaintiff and MOTOKU'S online storefronts that the products are labeled and display patterns that are dissimilar to one another. *Compare*, [Dkt. 1, ¶ 7] with (Exhibit A). MOTOKU sells its products from an Amazon online marketplace account that does not bear any resemblance or imply any sort of a relationship to Plaintiff's trademark or Plaintiff's business, and expressly identifies itself on the online marketplace. (Exhibit A); *See*, Packman, 267 F.3d at 642; Ciociola v. Harley-Davidson Inc., 552 F. Supp. 2d 845, 864 (E.D. Wis. 2008), as amended (May 28, 2008) (defendant's use of plaintiff's mark was in good faith where defendant used its own distinctive mark to indicate the product's source, suggesting lack of intent to use plaintiff's mark as a trademark). This removes any likelihood of confusion to consumers that there is some association or sponsorship between Plaintiff and MOTOKU's products. Accordingly, MOTOKU descriptively "used" the term "KTM" in its product title and listing in good faith and Plaintiff does not allege otherwise.

5.     **MOTOKU's "Use" Of The Term KTM Was, Alternatively, Nominative.**

MOTOKU's "use" of Plaintiff's trademark was plainly nominative. Such a use of Plaintiff's trademark constitutes nominative fair use because it is solely meant to inform consumers of its compatibility with Plaintiff's product and does not suggest sponsorship or endorsement by Plaintiff. *See*, Illinois High Sch. Ass'n v. GTE Vantage Inc., 99 F.3d 244, 246 (7th Cir. 1996), as amended (Dec. 3, 1996); Data Mgmt. Ass'n Int'l v. Enter. Warehousing Sols., Inc., No. 20 C 04711, 2020 WL 7698368, at *2 (N.D. Ill. Dec. 28, 2020) (collecting cases). Borrowing Ninth Circuit analysis, a nominative fair use defense requires that: (i) the product or service in question must be one not readily identifiable without use of the trademark; (ii) only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and (iii) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. New Kids on the Block v. News Am. Pub., Inc., 971 F.2d 302, 308 (9th Cir. 1992); *See*, Ty, Inc. v. Publications Int'l, Ltd., No. 99 C 5565, 2005 WL 464688, at *6 (N.D. Ill. Feb. 25, 2005) ("The New Kids test provides sound criteria for assessing when nominative use is fair or unfair, despite a likelihood of confusion among consumers.").

MOTOKU provides aftermarket products that are designed to be compatible with products which are sold by Plaintiff, and many other manufacturers. MOTOKU's use of the word "KTM" in the product listing serves merely to identify to consumers that their products will function with Plaintiff's products. Without MOTOKU's minuscule utilization of the term KTM, a purchaser would not know whether MOTOKU's product could be compatible with Plaintiff's product. MOTOKU's product listing at issue expressly and plainly identifies MOTOKU as being

the source identifier and does not suggest in any way that MOTOKU is associated with or sponsored or endorsed by Plaintiff. (Exhibit A).

Plaintiff's Complaint, and documents referenced therein and which are central to Plaintiff's claims against MOTOKU, admit all of these elements. [Dkt. 1, ¶ 15-20]; (Exhibit A); *Cf.*, Slep-Tone Entm't Corp. v. Coyne, 41 F. Supp. 3d 707, 718 (N.D. Ill. 2014) ("because the complaint does not admit all the ingredients of the nominative fair use defense, the defense does not provide a basis for a Rule 12(b)(6) dismissal."). Plaintiff's complaint should be dismissed, and the preliminary injunction dissolved.

III. CONCLUSION

MOTOKU is an online storefront run by a Colorado corporation that is not a party to this matter, over which this Court does not have jurisdiction. It is clear from the facts in Plaintiff's Complaint and the declaration provided by the owner of Colorado eCommerce Plus, Inc., which operates the MOTOKU online store on Amazon, that MOTOKU does not use any marks owned by Plaintiff in any manner that would likely cause consumer confusion. Any use of marks was in good faith and done to identify the compatibility of MOTOKU's aftermarket motorcycle parts. This "use" constitutes fair use, and thus Plaintiff's claims of infringement must fail.

WHEREFORE, MOTOKU respectfully requests that the Court enter an Order dismissing it from this matter, and awarding it any other relief the Court deems just and proper.

Respectfully submitted,

/s/ Erin K. Russell
Erin K. Russell, Esq.
Counsel for Defendant MOTOKU
THE RUSSELL FIRM, LLC
833 W. Chicago Avenue, Suite 508
Chicago, IL 60642
312-994-2424
erin@russellfirmip.com

CERTIFICATE OF SERVICE

This is to certify that on February 3, 2021, a copy of the foregoing was filed via the Court's ECF filing system, thereby serving it upon all counsel of record.

/s/ Erin K. Russell